[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from denial of a subdivision application. The property which is the subject of the application was obtained by the plaintiff, Running Brook Properties, which is a Connecticut general partnership, by warranty deed dated September 29, 1989. On August 28, 1990 the plaintiff filed an application for subdivision of the property and an application for a special permit to conduct a regulated activity within 25 feet of a wetland. The second application was approved by the Planning and Zoning Board [hereafter called "the Board"] and is not material to this appeal. The subdivision application was for a cluster subdivision under the Milford Zoning Regulations and proposed ten lots each containing slightly less than one-half acre of land, a subdivision road, seven acres of open space, and a 12 acre parcel that was not proposed for development. The applicant had submitted information that the land could be developed as a conventional ten lot subdivision but that it was more suitable as a cluster subdivision, as allowed by Milford's Zoning and Subdivision Regulations, because of inland wetlands on the property.
A public hearing was held on the application on October 16, 1990. The length of the transcript suggests that the public hearing lasted 45 minutes to an hour, documents were filed, and there were comments both in favor of and opposed to the application. The application was reviewed by the Subdivision and Special Permits Committee of the Board on November 28, 1990, which discussed the plans and indicated that it would recommend approval to the full Board subject to several conditions.
At the Board's meeting of December 4, 1990 it first discussed the application for a special permit to conduct regulated activities within 25 feet of an inland wetland. After discussion, that application was approved by a 5 to 4 vote. Later at the same meeting the Board considered the ten lot cluster subdivision application. After some general comments by several Board members for and against the application, the Board took a vote on a motion to approve it. There were four affirmative votes and five negative votes. The Board's chairman did not vote, commenting that even if he did vote for the application it would still be CT Page 3995 defeated. After further discussion and without referencing any sections of the subdivision regulations, a motion to deny the subdivision was made and voted upon by several Board members, and the chairman declared that the motion had carried. (Exhibit KK, page 26, transcript of public hearing; a statement in the minutes, Exhibit JJ, that the motion carried unanimously does not coincide with the transcript.)
Running Brook Properties, the unsuccessful applicant, was the owner of the subject property when the application was made and at the time of trial, even though one of the original partners had recently acquired the interest of the others in the subject property. This change in the composition of the general partnership does not eliminate the plaintiff's standing to maintain the appeal. Since Running Brook Properties remained the owner of the parcel involved, it was aggrieved by the Board's denial of the subdivision and has standing to maintain this appeal. Bossert Corporation v. Norwalk, 157 Conn. 279, 285. The plaintiff makes three claims in this appeal: (1) the Board was required to approve the subdivision because it complied with the subdivision regulations; (2) predetermination of the application by at least one Board member; and (3) two Board members did not attend the public hearing and should not have voted on the application.
The evidence does not support a predetermination claim. Predetermination exists only where it is shown that the agency members were irrevocably committed to a particular action no matter what evidence was produced before the agency. Daviau v. Planning Commission, 174 Conn. 354, 358. Agency members may have a tentative opinion on any application prior to the public hearing. Cioffoletti v. Planning and Zoning Commission, 209 Conn. 544, 555; Daviau v. Planning Commission, supra, 358. Here the predetermination claim is based upon the fact that an apparent opponent of the application, one "Mr. Farley", contacted two Board members after the public hearing in an attempt to take them to the subject property and influence them to vote against the application. The two Board members contacted were Albert Munroe and Angelo Marino. Despite a threat by Farley over the telephone to Marino, he refused the request to view the property and voted for the application. Munroe's conduct was not so commendable. He went to the property with Farley after the public hearing, discussed the property with him and voted against the application. Moreover, Munroe reported his meeting with Farley at the discussion on the application with the other Board members. Munroe probably would have voted against the application anyway even if he had not met with Farley, and the plaintiff has not proven its claim of CT Page 3996 predetermination. While not raised by the plaintiff, Munroe's conduct was clearly improper and amounted to illegal receipt of evidence after the public hearing which would be grounds for invalidating the Board's action unless it could show that the post-hearing meeting between Munroe and Farley did not prejudice approval of the application. Blaker v. Planning and Zoning Commission, 212 Conn. 471, 478. See also Pizzola v. Planning and Zoning Commission, 167 Conn. 202, 208; Wasicki v. Zoning Board,163 Conn. 166, 174. The defendant would have a tough burden of proof if the claim had been raised since Munroe discussed his meeting with Farley before the Board, and there was a 5 to 4 vote to deny the subdivision application.
Two members of the Board, Kevin Norman and Timothy Chaucer, did not attend the public hearing on the subdivision application on October 16, 1990. In addition, neither of them attended the Subdivision and Special Permits Committee meeting of November 28, 1990, and did not review the Board's entire file containing all of the documents filed on the subdivision application, or listen to the tape recording of the public hearing. During the December 4, 1990 meeting when the application was decided, Norman reviewed the subdivision maps, but there is no indication that he reviewed other documents filed in support of the application. He participated in discussion of the application and voted against it. Chaucer reviewed the summary minutes of the public hearing but did not listen to the tape recording of the public hearing or review the transcript. He also failed to review the reports on the Wepawaug River flood study, and the reports of several City officials or agencies. It is unclear whether and to what extent he reviewed the subdivision and related maps. His only comments were questioning of whether the Board should have a report from the State Traffic Commission, but he also voted against the application.
In order for a member of a land use agency to participate in its decisions, the member must be sufficiently familiar with the evidence and arguments presented at the public hearing and the documents before the agency in order to exercise an informed judgment. Dana-Robin Corporation v. Common Council, 166 Conn. 207, 216, 217; Loh v. Town Plan and Zoning Commission, 161 Conn. 32, 42; Watson v. Howard,138 Conn. 464, 466; Grillo v. Zoning Board of Appeals, 4 Conn. App. 205,207, reversed on other grounds, 206 Conn. 362. While an agency member who did not attend the public hearings on the application can listen to a tape recording of them and review material documents before voting, Loh v. Town Plan and Zoning Commission, supra, 42; Derby v. Water Resources Commission, 148 Conn. 584, 589, neither Norman or Chaucer CT Page 3997 were sufficiently familiar with important parts of the record to have participated in the commission's decision. If they had abstained, as they should have, the application would have passed by a 4 to 3 vote unless the chairman then voted against the application and against the subcommittee's recommendations.
The plaintiff requests the Court to go further and direct that the application be approved because it conformed with the subdivision regulations. When reviewing a subdivision application, a planning commission acts in an administrative capacity. RK Development Corporation v. Norwalk, 156 Conn. 369, 376; Beach v. Planning and Zoning Commission, 141 Conn. 79, 84; Westport v. Norwalk, 167 Conn. 151,155. The commission is limited to determining whether or not the subdivision application complies with the subdivision regulations. R.B. Kent Son, Inc. v. Planning and Zoning Commission, 21 Conn. App. 370, 373; Reed v. Planning and Zoning Commission, 208 Conn. 431, 433. It cannot disapprove a subdivision for a reason or based upon a standard not contained in its existing regulations. RK Development Corporation v. Norwalk, supra, 377; Beach v. Planning and Zoning Commission, supra, 85. Where an application meets the existing subdivision regulations, the planning commission must approve it. RK Development Corporation v. Norwalk, supra, 376; Gagnon v. Municipal Planning Commission, 10 Conn. App. 54, 57. Where the commission gives reasons for denial of a subdivision, the question on appeal is whether any of the reasons assigned for denial of the application were valid. RK Development Corporation v. Norwalk, supra, 377; Blakeman v. Planning Commission, 152 Conn. 303, 306. A planning commission is required by section 8-26 of the General Statutes to give reasons for its action, but if it turns down an application without giving reasons, the court should search the record to determine if the application failed to comply with any specific, substantive provision of the subdivision regulations. Sowin Associates v. Planning and Zoning Commission, 23 Conn. App. 370, 377.
In this case the Board voted to deny the application, but no reasons were assigned for its decision. A review of the discussion on the application (Exhibit KK, pages 15-26) does not disclose any reference by the Board members to any section of the subdivision regulations that the subdivision allegedly does not comply with. When the Court searches the record for reasons to support the agency's decision, it is looking for reasons which motivated the agency's action, not to invent its own reasons for a denial following a de novo review of the merits of the application. To apply such a CT Page 3998 standard of review would encourage planning commissions to give no reasons for denying subdivision applications, giving them a broader opportunity to be upheld on appeal, and impose on the court the burden of carrying out the commission's responsibilities. Moreover, a planning commission has the duty to tell the applicant in what respect the subdivision fails to conform to the regulations. RK Development Corporation v. Norwalk, supra, 377. The purpose of the rule allowing the court to search the record where the commission fails to assign reasons for its action is to avoid invalidating the agency's decision where there were sound reasons for its action but it failed to articulate them properly. A situation where a planning commission has no valid reasons for denying a subdivision is different from a situation where it has valid reasons but fails to state them at all or fails to state them properly.
Where an administrative agency formally states reasons for its decision, the court does not go beyond the official collective statement of the agency, search out and speculate upon reasons which might have influenced some or all of the agency members to reach the final decision, and does not consider the views of individual agency members. Schwartz v. Town Planning and Zoning Commission, 168 Conn. 285, 290; DeMaria v. Planning and Zoning Commission, 159 Conn. 534,541; Woodford v. Zoning Commission, 147 Conn. 30, 31. Where, as here, the commission assigns no reasons, the individual statements of commission members, while not controlling, provides some guidance as to the reasons why the application was denied.
While the Board members recognized that a cluster subdivision was allowed by the town's regulations and was probably the best method of developing the subject property, one concern was that some of the houses might be within 25 feet of wetlands. This ignored the fact that the inland wetlands agency had no objection to the proposal and had approved a regulated activities permit with conditions. Also, the Board itself had granted the special permit application for regulated activities within 25 feet of wetlands. In addition, that aspect of the cluster subdivision did not conflict with any identified, specific subdivision regulation. The town's brief claims that the Board may have denied the application because the proposed road joined North Street at a dangerous point, and that ten new residential building lots close to the Wepawaug River might cause additional flooding in the area relying upon section 8-25 (a) of the General Statutes and section 3.2 of the subdivision regulations. The Board members did not discuss these concerns as grounds for denial of the CT Page 3999 application. Section 8-25 (a) is merely the enabling statute authorizing the matters that may be the subject of subdivision regulations. It authorizes specific provisions for drainage and protective flood control measures in areas contiguous to brooks, rivers or other bodies of water subject to flooding. A review of the Milford Subdivision Regulations, however, does not disclose any specific provisions on this subject, and none have been identified by the Board. Section 3.2 of the regulations does contain a general laundry list of factors for proposed building lots, and buried in it is a reference to "flooding conditions" and the customary bromide that lots must be able to be used for building purposes without danger to public health and safety, but general policy statements in the subdivision regulations are not a valid reason for rejecting a subdivision application. Sowin Associates v. Planning and Zoning Commission, supra, 376. See also Kosinski v. Lawlor,177 Conn. 420, 423 (general statements in administrative regulations can only be used in conjunction with and not as an alternative to specific standards in the regulations.) Moreover, none of the Board members mentioned flooding problems due to development along the river during the Board's deliberations.
Finally, section 2.2.4 of the regulations required reports of approvals from various officials and departments of the city. The applicant obtained these approvals, and there were no negative reports. The Milford Inland Wetlands Agency had previously reviewed and approved the proposal. While some opponents of the application such as neighboring property owners made self-serving, general statements about occasional flooding along the Wepawaug River, there is no evidence in the record indicating that the proposed ten lot subdivision would aggravate any such problem, and the Board members did not seize upon it as a reason for opposing the application.
The Board also did not identify any noncompliance of the subdivision with any highway design provision in the subdivision regulations or road standards of the city. During the discussions some of the Board members pointed out that the police department had no problems with the project and that the subdivision would discharge onto North Street, a of state highway, which would require curb cuts and permits to be issued by the State Traffic Commission.
Finally, there is no provision in the subdivision regulations allowing denial of an application because of safety concerns of traffic leaving the subdivision and entering a state highway. See Reed v. Planning and Zoning CT Page 4000 Commission, 208 Conn. 431, 434-436. Since the subject property is in a residential zone and the subdivision is for residential purposes, the Board as a planning commission cannot consider off-site traffic concerns when deciding whether to approve the application. Sowin Associates v. Planning and Zoning Commission, supra, 375.
Since a review of the record in general, and the discussion by the Board members in particular discloses no failure to comply with the subdivision regulations, the applicant was entitled to approval. RK Development Corporation v. Norwalk, supra, 376; Gagnon v. Municipal Planning Commission, supra, 57. Since the subdivision complied with the Board's regulations, the Board can be directed to approve it. Beach v. Planning and Zoning Commission, supra, 85; Lordship Park Association v. Board of Zoning Appeals, 137 Conn. 84, 92; RK Development Corporation v. Norwalk, supra, 376.
The appeal is sustained and the Board is directed to approve the plaintiff's subdivision application.
ROBERT A. FULLER, JUDGE
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 4003