[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs appeal to the Superior Court from the denial by the Planning and Zoning Board of the City of Milford of an application for resubdivision in which the plaintiffs proposed to divide their house lot now consisting of 53,201 square feet into two parcels consisting of plots 24,568 and 28,633 square feet respectively. The court finds and the defendants concede that the plaintiffs, as the owners of the parcels, are authorized by statute to bring this action and have proven their ownership from the date CT Page 4566 of application to the date of trial. The plaintiffs claim their appeal of the commission's decision should be sustained for the following reasons: (1) the plaintiffs as owners of the premises within a cluster subdivision are entitled to approval since on their resubdivision application they met all other subdivision regulation requirements and the proposed resulting lot sizes met the 18,000 minimum square foot requirements for a cluster subdivision in an R-A zone; (2) the record is devoid of any reasons for denial meeting any fixed standard grounded in the evidence which would have been applicable to any and all like subdivision applications made in Milford and therefore the application should have been granted and the appeal should be sustained because commission denial was an arbitrary exercise of pure and unfettered discretion on the part of the board; (3) the planning commission has not adopted separate regulations governing resubdivision, and because state statute and the ordinance includes this application within the meaning of subdivision, the Milford Zoning Commission lacks authority to deny a resubdivision plan which complies with subdivision requirements of the planning and zoning commission; (4) reasons given for the denial are vague, uncertain in meaning and provide no information for the applicants to enable them to know how their proposed plan failed to satisfy requirements of the regulations; (5) the application was denied for purely political reasons because the plaintiff, Henry A. Povinelli, was a former mayor of the City and of a different political alignment from the members who voted against the application.
The defendant, on the other hand, contends that: (1) section 3.2.9 of the subdivision regulations which requires that each lot in a resubdivision shall comply with the minimum requirements of the zoning regulations of the zoning district in which it is located warrant denial because the proposed lots are in an R-A zoning district which requires one acre minimum lot size and neither of the two resulting lots contain this minimum lot area; (2) once a zoning violation has been found on a submitted subdivision application, a commission may not approve it; (3) although the original developer had not utilized the maximum number of lots in the subdivision of which the Povinellis' 53,201 square foot lot is a par, section 3.2.9 of the regulations requires that each resulting lot comply with the minimum requirements for the "zoning district" in which the proposed lot is located, not in the previous cluster subdivision of which the resubdivision is a part.
At the outset, the plaintiff Mr. Povinelli has noted that he followed the suggested procedure in the subdivision regulations to discuss his preliminary plan with appropriate city planning authorities prior to proposing the subdivision application which was denied and is the subject of his appeal. It was suggested that he obtain an engineer's design system which he did at his own CT Page 4567 trouble and expense, only to have his new application denied on other grounds. Evidentally, he was never advised he needed a a variance as to lot size. The court is sympathetic to the certain I frustration engendered by that sequence of events, however, since the application did not meet regulation requirements, the plaintiffs' appeal cannot be sustained.
The court will first turn to the plaintiff's claim at oral argument that the application was denied for political reasons.
There is no evidence before the court in the record or outside it that would warrant the court finding that the application was denied as part of some political vendetta, nor is there evidence to warrant a finding by the court that any unlawful political predetermination of the application was made. To sustain a predetermination claim it was plaintiffs' burden to show either from the record or some evidence offered from outside the record that the commission had determined to deny the application prior to the plaintiffs being heard because of some partisan political reason regardless of the provisions of the zoning ordinance or the merits of the application. There was no such evidence and the court therefore rejects the assertion that the appeal should be sustained because it was prompted by political considerations. See Marmah, Inc. v. Greenwich, 176 Conn. 116, 405 A.2d 63 (1978); Daviau v. Planning Commission, 174 Conn. 354, 387 A.2d 562 (1978).
It is also worth noting that on appeal to the Superior Court from any administrative agency action, subjective intent or motive of those voting against the application does not determine whether the appeal should be sustained. Whether a subdivision application should have been denied is an objective determination if the application objectively does not meet planning and zoning regulation requirements, its denial must be upheld.
The parties agreed with the court's analysis that their remaining arguments come down to whether the one acre minimum lot size of an R-A district appertains or whether the 18,000 square foot minimum cluster subdivision requirements apply because 18,000 square feet was the minimum applicable size for the original cluster and the original developer of the subdivision in which Povinellis' land is located did not utilize the maximum number of lots on that 18,000 square foot size on his plan that the cluster zoning would have permitted.
In disapproving a subdivision plan, a planning commission acts in an administrative capacity rather than in the exercise of a legislative or quasi judicial function. R. K. Development Corporation v. Norwalk, 156 Conn. 369, 376, 242 A.2d 781 (1968).
This observation has its importance in setting the scope of CT Page 4568 judicial review of the agency's action because the agency's administrative action is more severely circumscribed than when it exercises legislative or quasi judicial functions which permit it wide discretion.
The local agency's duty is to follow its own subdivision regulations and to approve the applicant's application if it complies with them and deny it if it does not. Westport v. Norwalk, 167 Conn. 151, 155, 157, 355 A.2d 25 (1974); General Statutes 8-26; Federico v. Planning Commission and Zoning, 5 Conn. App. 509,515, 500 A.2d 571 (1985); Reed v. Planning and Zoning Commission, 12 Conn. App. 153, 156, 529 A.2d 1338 (1987), affirmed208 Conn. 431, 433.
The court's analysis of the agency's administrative function in denying the plan must focus on whether the Board erred in that determination.
The proposed plan did not comply with the subdivision regulations or zoning ordinance and therefore the Board was justified in denying it.
The Zoning District Map shows the parcel proposed to be subdivision as part of an R-A zone, according to section 3.3.4.1 of the zoning ordinance a minimum of 43,560 square feet is required in such a zone for each lot.
Section 8-18 of the General Statutes defines the terms "subdivision" and "resubdivision" as follows:
 "Subdivision" means the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission, for the purpose, whether immediate or future, of sale or building development expressly excluding development for municipal, conservation or agricultural purposes, and includes resubdivision; "resubdivision" means a change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on such map; (b) affects any area reserved thereon for public use or (c) diminishes the size of any lot shown thereon and creates an additional building lot, if any of the lots shown thereon have been conveyed after the approval or recording of such map; "town" and "selectmen" include district and officers of such district, respectively.
IA.
The Subdivision Regulations define a resubdivision in section CT Page 4569 5.2.20 in pertinent part as follows: "A change in a map of an approved or recorded subdivision if such change: . . . (c) diminished the size of any lot shown thereon have (sic) been conveyed after the approval of recording of such map." This subdivision definition in the Milford Regulations contains an obvious scrivener's error because as it reads in the printed text its last phrase is neither grammatical nor comprehensible. There is no authority for a commission to adopt as a regulation a definition of subdivision or for that matter resubdivision which differs from that found in the statute, therefore the statutory definition controls. Peninsula Corporation v. Planning Zoning Commission of New Fairfield, 151 Conn. 450, 452, 199 A.2d (1964).
It is obvious to this court that Mr. and Mrs. Povinelli's application constitutes a "Resubdivision" as defined by 8-18 of the General Statutes because they are attempting to cut one lot into two which would diminish the lost size originally approved prior to conveyance to them. A subdivision is defined in pertinent part in section 5.2.28 of the ordinance to include resubdivision. Therefore a Resubdivision Cluster Developments are provided for in section 5.7 of the zoning ordinance. However, it is a form of development not one of the zoning district set out in Article III of the ordinance.
Section 5.7.4.4 provides as follows: "Minimum Lot Building Requirements: Under this section, no lot or development site in a permitted Residential District shall be reduced below the applicable minimum lot and building requirements as set forth hereinafter." For a residential R-A district a "modified lot area" requirement "For cluster Subd[ivisions] is set at 18,000 square feet."
According to section 5.7.5 of the zoning ordinance, the effect of approval is "[a]n approved Cluster Development shall be deemed to conform to the provisions of the Zoning District in which it is located so long as all applicable regulations and conditions of approval are met." A reasonable construction of this provision is that the allowance of an approved 18,000 square foot minimum lot[1]
in a cluster subdivision developed in an R-A one acre minimum district, will be deemed to be a conforming lot so long as all applicable regulations and the conditions of original approval including the sizes, configuration, and number of lots, continue to be met, but if any of those conditions cease to be met, conforming status would be lost.
A reasonable harmonization and interpretation of all of these provisions is that in Milford, Connecticut, cluster development is a permitted form of subdivision development. It is not a zoning district. The Povinelli lot is shown on the zoning map in an R-A one acre minimum zoning district. When one seeks to split a CT Page 4570 previously approved one lot into two, the conditions of the original approval of the cluster subdivision are no longer met and therefore the split lots can no longer be deemed to conform to the minimum lot area requirements in the zoning district in which they are located because neither resulting lot meets the one acre requirement of the R-A zone. See Section 5.7. A planning board may deny approval of a subdivision plot if one lot on that plot violates the zoning ordinance. Krawski v. Planning Zoning Commission, 21 Conn. App. 667, 575 A.2d 1036 (1990); Cf. 8-26
General Statutes.
The reason for denial given to the plaintiffs, Mr. and Mrs. Provinelli, was that:
 The lot size of 30,000 sq. ft. or larger was established by the Board by the granting of final approval for the original Section IV cluster subdivision.
The court agrees with the plaintiff that the Board does not have the ability to require different minimum requirements for lot size in a resubdivision application which are higher than the minimum lot size requirements for other lots similarly situated.
However, on resubdivision applications, the minimum lot size of the zoning district in which the plot is located applies to each proposed lot, and that was not met in the applicants' proposal, because the resulting lots were not equal to the one acre minimum that the R-A district requires. In other words, a one acre minimum applied not only to Mr. Povinelli's lot but to all others in the R-A district.
The Povinelli application was a new subdivision application. In his testimony before the Board Mr. Povinelli referred to it as a resubdivision. It could not qualify as a new cluster subdivision application permitting 18,000 square foot minimum lots, because Mr. and Mrs. Povinelli owned only 53,201+ square feet of land. Section 5.7.4.1 of the zoning ordinance requires that the minimum gross site area of a cluster development site "shall be not less than three times the lot area requirement from section 3.1.4 or 3.2.4 of the District which said development is located." Whether that minimum is construed to be Section 3.1.4's three acres or Section 3.2.4's 54,000 square feet, the applicants' application did not meet it.
The court will now turn to the reason for denial in the Board's notice of denial to the plaintiff.
In Couch v. Zoning Commission, 141 Conn. 349, 358,106 A.2d 173 (1954), the Supreme Court said, in referring to Zoning Board members: CT Page 4571
 It must be borne in mind, however, that we are dealing with a group of laymen who may not always express themselves with the nicety of a Philadelphia lawyer. Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions.
To the extent that the reason for denial indicated that the Board has established certain lot sizes in the original grant of subdivision approval of the original subdivision map, the smallest of which was 30,000 square feet, the Board gave a reason which is a valid basis for denial because under Section 5.7.5 of the ordinance any diminishment in the size of a lot previously approved to less than the one acre size required by an R-A zone would end its conforming status. To the extent that the Board pointed out to the applicant that no lot on the recorded original subdivision plan was as small as that proposed there was adequate notice of how the proposed plan failed to satisfy requirements of the regulations.
For all of these reasons, the appeal is dismissed.
FLYNN, J.